Thomas A. Larkin, OSB #923623
tlarkin@sokol-larkin.com
Grant N. Margeson, OSB #215754
gmargeson@sokol-larkin.com
SOKOL, LARKIN, WAGNER & STORTI LLC
4380 S Macadam Ave, Suite 530
Portland, OR  97239
Telephone: (503) 221-0699
Facsimile: (503) 223-5706

*Attorneys for Plaintiffs Chalice Vineyards, L.L.C.,
dba Iris Vineyards, King Estate Winery Limited
Partnership, and Pfeiffer Vineyards, Inc.*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| CHALICE VINEYARDS, L.L.C., dba IRIS VINEYARDS, an Oregon domestic limited liability company; KING ESTATE WINERY LIMITED PARTNERSHIP, an Oregon domestic limited partnership; and PFEIFFER VINEYARDS, INC., an Oregon domestic business corporation,<br><br>         Plaintiffs,<br><br>   v.<br><br>UNITED STATES and LANE ELECTRIC COOPERATIVE, INC, an Oregon registered electric utility,<br><br>         Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**(Negligence, Trespass, Private Nuisance, Public Nuisance)**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.      On September 7, 2020, powerlines started the Holiday Farm Fire in the

COMPLAINT - 1

SOKOL ⌂ LARKIN

McKenzie River Valley in Lane County, Oregon.  The devastating fire spread rapidly—ultimately burning over 170,000 acres, displacing families, and destroying communities. The devastation and impact of the Fire was not limited to directly burning properties, homes, and vegetation, but also included the substantial amounts of smoke and ash that the Fire released into the air and spread across Lane County.  The effect of the smoke impacted many lives, both in the short and long term, including by wreaking havoc on the grapes grown in the renowned and fertile Willamette Valley.  This Action seeks to recover damages caused by the Holiday Farm Fire's smoke, particles, and chemicals, which made grapes unsuitable for wine.

## THE PARTIES

2.     Plaintiff Chalice Vineyards, L.L.C., dba Iris Vineyards ("Iris") is a limited liability company formed under the laws of the State of Oregon and owns and operates a 43-acre estate vineyard that produces Pinot Gris, Chardonnay, and Pinot Noir grape varietals.   Due to its location, elevation, soil composition and meticulous farming practices, Iris' South Willamette Valley vineyard has a history of growing high-quality fruit that has consistently produced award-winning wines.

///

///

///

///

///

///

///

COMPLAINT - 2



**Fig. 1- Iris Vineyards**

3.     Plaintiff King Estate Winery Limited Partnership ("King Estate") is a limited partnership formed under the laws of the State of Oregon and owns and operates a beloved vineyard located in Willamette Valley, Lane County, Oregon.  Founded in 1991 by the King family, King Estate has a deep commitment to sustainable farming and is the largest Biodynamic certified vineyard in North America.  Known for wines with an artisanal style that celebrates the unique characteristics of the Pacific Northwest, King Estate's sustainably grown and thoughtfully produced wines are world renowned for their quality.

4.     King Estate makes award-winning wines out of grapes from the prestigious Willamette Valley, Oregon.  While King Estate sources some grapes from others, as much as one-third to one-half of the grapes used in King Estate's production come from King Estate's estate-grown, certified Biodynamic fruit.  Situated on 1,033 acres southwest of Eugene in the Willamette Valley, King Estate is a working farm with 465 acres of planted grapes, including 143 acres of pinot noir, 314 acres of pinot gris, and the balance in

COMPLAINT - 3

muscat, gewürztraminer and other varietals (among another 26 acres that feature greenhouses, vegetables, berries, lavender, flowers, beehives, and a fourteen-acre orchard with apple, pear and plum trees).  The estate's rustic beauty and location is ideal for producing world-class wines.



**Fig. 2 - King Estate**          **Fig. 3 - King Estate's Vineyards**

5.    Organic since 2002, King Estate became the largest certified Biodynamic vineyard in North America in 2016.  Biodynamic farming is important for the quality and authenticity of King Estate's wines.   No toxic chemicals—no herbicides, synthetic fertilizers, or pesticides—are used on King Estate's property, allowing for the purest expression of the site's singular terroir.  That is, one of the reasons for King Estate's success as a winery is due to King Estate's deep commitment to carefully avoiding grapes that have been exposed to harmful chemicals.

6.    Plaintiff Pfeiffer Vineyards, Inc. ("Pfeiffer") is a business corporation formed under the laws of the State of Oregon and owns and operates a 70-acre vineyard that

COMPLAINT - 4

produces pinot gris and pinot noir fruit. King Estate regularly purchases grapes from Pfeiffer for production of their Pinot Gris and Pinot Noir wines, highlighting that Pfeiffer's location and soil composition positions it as one of the best vineyards in Willamette Valley for growing Pinot Gris and Pinot Noir grapes.



**Fig. 4 – Pfeiffer Vineyards**

7. Collectively, Iris, King Estate, and Pfeiffer are referred to as "Lane County Winemakers" herein. Lane County Winemakers represent some of the most prestigious and celebrated vineyards and wineries in Oregon.

8. Defendant the United States Bonneville Power Administration, ("BPA") is an administration within the Department of Energy of the United States that markets power in the Pacific Northwest. BPA generates power primarily through hydroelectric dams, in addition to some nuclear plants. BPA provides electricity and maintains about seventy-five percent (75%) of the high-voltage transmission powerlines within its service area,

SOKOL LARKIN

4380 S Macadam Ave., Suite 530
Portland, OR  97239
(503) 221-0699
FAX (503) 223-5706

which includes the states of Oregon, Washington, Idaho, Montana, Wyoming, Nevada, Utah, and California.  Upon information and belief, BPA provides electricity and maintains powerlines throughout the McKenzie River Valley in the District of Oregon, including the location where the Holiday Farm Fire began.

9.      Defendant Lane Electric Cooperative, Inc. ("LEC") is a private corporation organized under ORS Chapter 62 and a registered electric utility in the State of Oregon. Upon information and belief, LEC's principal place of business is in Lane County, within the District of Oregon, and LEC provides electricity and maintains powerlines throughout the McKenzie River Valley in the District of Oregon, including the location where the Holiday Farm Fire began.

## JURISDICTION AND VENUE

10.      This Court has general personal jurisdiction over all Defendants because they conduct substantial business in the District of Oregon and maintain regular business activities and contacts within the District of Oregon.

11.      This Court has subject matter jurisdiction over claims against defendant BPA as a Federal agency pursuant to 28 U.S.C. §§ 1331 and 1346.

12.      Lane County Winemakers properly served a Federal tort claim notice on BPA in accordance with 28 U.S.C. § 2401(b).  Notice of Lane County Winemakers' claims was presented more than six months prior to the date of the filing of this action.  At the time of filing, BPA has failed to respond to Lane County Winemakers' Notice for over six months, and, therefore, Lane County Winemakers are entitled to bring this action against BPA under 28 U.S.C. § 2675(a).

13.      This Court has supplemental jurisdiction over claims against defendant LEC

COMPLAINT - 6

SOKOL ☖ LARKIN

4380 S Macadam Ave., Suite 530
Portland, OR  97239
(503) 221-0699
FAX (503) 223-5706

under 28 U.S.C. § 1367(a) because those claims arise from the same case or controversy as the claims against BPA.

14.     Venue is proper in the District of Oregon under 28 U.S.C. § 1391 because Defendants' acts and omissions causing the Holiday Farm Fire, and Lane County Winemakers' damages, occurred within the District of Oregon.

## GENERAL ALLEGATIONS

### The Holiday Farm Fire

15.     Throughout the summer of 2020, Lane County experienced historically dry conditions.  These conditions created an extreme risk for wildfire, including in the vicinity of Rainbow, Oregon, where the Holiday Farm Fire began.

16.     Given the dry conditions, when high winds were forecasted for early September, agencies and news outlets reported on the dangers and risks of extreme fire weather conditions.

17.     Between Saturday, September 5, 2020, and Monday, September 7, 2020, the National Weather Service issued numerous warnings regarding the high winds and extreme fire risk, including the issuance of Red Flag Warnings that warned of especially dangerous conditions in specific areas including the area in and around the McKenzie River in Lane County, Oregon.

18.     At approximately 8:00 p.m. on September 7, 2020, Governor Kate Brown's chief of staff held a call with electric utilities in which Doug Grafe, Chief of Fire Protection for the Oregon Department of Forestry advised the utilities to deenergize their lines to prevent ignition of more wildfires.

19.     On September 7, 2020, two separate and distinct points of ignition from

COMPLAINT - 7

energized powerlines started and merged together to become the Holiday Farm Fire near the McKenzie River and Highway 126.  The resulting uncontrolled fires emitted smoke particulates that were absorbed by the Lane County Winemakers' grapes, causing damage to the Lane County Winemakers.

20.     Upon information and belief, LEC and BPA were fully aware of the extreme fire risk in advance of September 7, 2020, and had actual knowledge that the conditions in and around the location where the Holiday Farm Fire began were quickly worsening.

21.     Upon information and belief, LEC and BPA were aware of the need to deenergize powerlines given the conditions and each chose not to deenergize all such powerlines.

22.     Despite knowing of these hazardous conditions before they arose and having ample opportunity to act by deenergizing their powerlines, LEC and BPA chose not to minimize the risk of igniting a wildfire.  Upon information and belief, such failure recklessly created the substantial risk that a wildfire would ignite.

23.     Upon information and belief, at 5:25 p.m., a tree located near Milepost 42 of Highway 127 fell and pinned the A-phase conductor of an energized 115 kV transmission line operated and controlled by BPA between the Holden-Creek Substation and the Carmen Smith Powerhouse (the "Cougar-Holden transmission line").  This caused a fault and ignition of a fire (the "Milepost 42 ignition").

24.     Upon information and belief, the tree that fell was part of a multi-stem clump of trees that BPA had previously performed maintenance on.  Upon information and belief, during that maintenance, BPA negligently cut some–but not all–of the trunks, which left the remaining trunks weakened and unstable, in violation of BPA's own tree maintenance

COMPLAINT - 8

policies.

25.     Upon information and belief, 48 seconds after the Milepost 42 ignition, BPA reenergized part of the Cougar-Holden transmission line running from the Holden Creek Substation to the Blue River Tap, also reenergizing LEC's line in the process.

26.     Upon information and belief, a second ignition occurred at approximately 8:10 p.m. roughly one-hundred yards south of Highway 126, near MP 47 (the "Milepost 47 ignition") when a tree fell on the Eugene Water and Electric Board's ("EWEB") deenergized line, causing it to connect with LEC's reenergized line.  This connection caused EWEB's deenergized line to reenergize and ignite the fallen tree.

27.     Lane County Winemakers have been damaged because of smoke, ash, and/or particulate matter emitted by the 2020 wildfires.

28.     On or about January 18, 2024, Lane County Winemakers discovered that BPA is potentially responsible for the Milepost 42 ignition.  Prior to this point, information relating to BPA's involvement in the 2020 wildfires and the Milepost 42 ignition was—to Lane County Winemakers' knowledge—not publicly available.

29.     On or about September 16, 2020, The Oregonian published a story titled "Explosions, sparks from power line preceded Oregon's Holiday Farm fire, area residents say."  In that story, a spokesperson for the Bonneville Power Administration, Doug Johnson, stated that "we don't have any evidence that our equipment was associated with starting any fires."  Upon information and belief, the official investigation into the Holiday Farm Fire is ongoing and the investigative agencies conducting the investigation have yet to release reports naming the parties responsible for the fire.

30.     Upon information and belief, the Milepost 42 ignition and the Milepost 47

SOKOL LARKIN

4380 S Macadam Ave., Suite 530
Portland, OR  97239
(503) 221-0699
FAX (503) 223-5706

ignition merged to become the Holiday Farm Fire.

31.     The ignition of the Holiday Farm Fire was caused, at least in part, due to the Defendants' individual decisions to not deenergize lines that ran through trees likely to start fires.   Moreover, areas around the powerlines were not—upon information and belief—properly maintained and/or managed so as to avoid igniting wildfires with nearby vegetation or to be able to withstand wildfire conditions without starting a fire.   These issues were compounded by the fact that record level winds and heat were occurring throughout the region.

32.     Upon information and belief, the Milepost 42 ignition and the Milepost 47 ignition resulted from separate and distinct tortious acts that jointly caused damage to Lane County Winemakers.   The extent to which each distinct and separate tortious act was responsible for the full measure of damages suffered by Lane County Winemakers will be determined at trial.

## Damages to Lane County Winemakers

33.     Catastrophic wildfires can cause extensive damage to wine grapes when smoke and ash particulates are absorbed through the skin of the grapes.   This damage, known as "smoke taint," carries over into the wine produced with damaged grapes and creates an astringent taste often associated with an ash tray.   If smoke particulate levels are high enough in grapes, the resulting wine is not sellable.

34.     The smoke particles and/or ash emitted by the Holiday Farm Fire damaged Lane County Winemakers' vineyard grapes such that the value of Lane County Winemakers' 2020 grape harvest and resulting wine production and sales to the public were reduced and damaged significantly.

COMPLAINT - 10

SOKOL ⧉ LARKIN

4380 S Macadam Ave., Suite 530
Portland, OR  97239
(503) 221-0699
FAX (503) 223-5706

35.     As Iris approached harvest of Pinot Noir for sparkling and rosé wines, Iris was unable to obtain timely lab results for smoke taint due to labs being backlogged with similar requests from wineries throughout the Willamette Valley.  With no prospect for gaining timely information about smoke taint levels, Iris made the decision to harvest ten (10) tons of Pinot Noir for the sparkling and rosé wines.  Subsequently, Iris received results from an independent lab showing that smoke particulates exceeded acceptable levels.  As a result of this information, Iris concluded it could not make acceptable wine from its estimated 39.3 tons of unharvested Pinot Noir grapes.  This fruit was left on the vine.  This left Iris short of fruit to reach its Pinot Noir production goals for the 2020 vintage. To address market demand, maintain availability to distributors and maintain customer accounts, Iris was forced to make up the forty (40) ton shortfall by purchasing additional grapes in 2021 and bringing these less mature wines to the market earlier than would be consistent with Iris' goals for wine maturity and complexity, thereby damaging Iris' reputation for quality and consistency.

36.     To protect future supply relationships, Iris honored its Pinot Noir contracts with third party growers from other parts of the Willamette Valley less affected by smoke taint.  Iris paid third parties to have the wine treated with a reverse osmosis process to mitigate the smoke taint that was present.  Reverse osmosis strips not only molecules related to smoke taint but also other molecules that contribute desirable flavor characteristics, resulting in less complex and less desirable wines.  Reverse osmosis may not remove smoke taint to levels below the perception threshold of sophisticated palates. Iris was damaged by the cost to conduct the reverse osmosis and lab costs to determine whether the remaining levels of smoke taint would be outside the perception-level of

SOKOL ⧠ LARKIN

typical consumers.  Iris's reputation was also damaged by producing wines inconsistent with its usual high-quality offerings.

37.    The smoke taint from the Holiday Farm Fire damaged Iris by at least causing Iris to incur expenses in replacing its 2020 Pinot Noir with 2021 vintage Pinot Noir, paying third parties to test and treat its grapes and wines, purchase extra grapes in 2021 and 2022 to make up for lost production, personnel costs related to smoke taint issues, and losses incurred from rejecting 39.3 tons.  Iris's damages will be proven at trial but are believed to be no less than $80,232.00 at the time of this Complaint.

38.    To mitigate damage caused by smoke taint, King Estate conducted a smoke taint risk assessment for all vineyards in its portfolio (including Pfeiffer) so that King Estate could identify whether any grape yields were salvageable.  The resulting report demonstrated that grapes sourced from vineyards in the Southern Willamette Valley in and around Lane County were among the grapes that contained the highest levels of smoke particulates and demonstrated the highest risk for smoke taint.  The assessment recommended that grape tonnage from 90% of the contracted vineyards in Lane County that were tested should be rejected.

39.    As a result of the smoke taint damage from the Holiday Farm Fire, King Estate was forced to reject over two hundred and fifty (250) tons of pinot noir grapes, over six hundred (600) tons of pinot gris grapes, over fifteen tons of gewürztraminer grapes, and over five tons of other grapes from its vineyard.  King Estate was further unable to produce over approximately fifteen thousand (15,000) cases of wine sourced from its estate grapes.  King Estate was required to return over one hundred thousand (100,000) bottles of wine back to tank to cover market needs.

COMPLAINT - 12

SOKOL ⊔ LARKIN

4380 S Macadam Ave., Suite 530
Portland, OR  97239
(503) 221-0699
FAX (503) 223-5706

40.    The smoke taint from the Holiday Farm Fire damaged King Estate by at least causing King Estate to incur expenses (including conducting investigations and contracting for third party laboratory analysis), to lose wine revenues and profits from wine that King Estate could not make due to the smoke taint, and to lose wine revenues and profits from wine that King Estate had to turn back to tank to cover existing market needs, among other damages to King Estate.  King Estate's damages will be proved at trial but are believed to be no less than $10,693,850.00 as of the time of this Complaint.

41.    Results from Lane County Winemakers' testing demonstrated that 100% of Pfeiffer's grapes that were produced under contract for King Estate were positive for high levels of smoke taint and King Estate was forced to reject said grapes.  Pfeiffer, in turn, was forced to crush and process the grapes itself in the hopes that it could sell some of the wine on the wholesale market, incurring substantial costs.

42.    The smoke taint damaged Pfeiffer by causing Pfeiffer to incur storage, processing, crushing, and testing costs, plus the loss of profits from the contract rejected by King Estate.  Pfeiffer's damages will be proved at trial but are believed to be no less than $647,000.00 as of the time of this Complaint.

## FIRST CLAIM FOR RELIEF

### (Negligence – Against BPA)

43.    Lane County Winemakers re-allege and incorporate by this reference, the allegations set forth in paragraphs 1 through 42, as if fully restated herein.

44.    BPA had a duty to use reasonable care in the operation, monitoring, maintenance, and repair of their electricity infrastructures so as to not cause fires.  This duty includes without limitation the duty to maintain vegetation around their powerlines,

SOKOL LARKIN

4380 S Macadam Ave., Suite 530
Portland, OR  97239
(503) 221-0699
FAX (503) 223-5706

the duty to affirmatively deenergize powerlines when they know or should know fires are likely to be ignited, and the duty not to reenergize faulted or compromised lines during extreme weather events if it is likely that reenergization will unreasonably increase the risk of further ignitions.  BPA operates and/or controls the Cougar-Holden transmission line.  Accordingly, BPA had a duty to operate and maintain the Cougar-Holden transmission line in a manner that would not cause fires.

45.    It was reasonably foreseeable to BPA that, if it continued to energize its transmission lines in close proximity to unstable vegetation during an extreme weather event, such conduct could or would result in fires that directly and proximately cause damage to property owners in Lane County including Lane County Winemakers.  It was also reasonably foreseeable to BPA that reenergizing the Cougar-Holden transmission line after the line already ignited one fire would result in more ignitions, directly and proximately causing damage to property in Lane County, including property owned by Lane County Winemakers.

46.    BPA's conduct in the face of overwhelming evidence that their conduct would result in uncontrollable wildfires constitutes negligence that is materially greater than the mere absence of reasonable care under the circumstances.

47.    Upon information and belief, BPA's conduct constituted negligence or a higher degree of fault and created unreasonable risks of harm in at least the following instances:

a.    BPA decided not to completely remove a dangerous and weakened tree that BPA knew or should have known posed significant risk of falling onto the Cougar-Holden transmission line during an extreme weather event;

COMPLAINT - 14

SOKOL ⧖ LARKIN

b. BPA intentionally left its lines energized throughout the day on September 7, 2020, despite an extreme weather event occurring, despite other power companies electing to deenergize their power infrastructure, and despite warnings from the National Weather Service, Oregon Department of Forestry, and the media; and

c. BPA intentionally reenergized a portion of the Cougar-Holden transmission line immediately after the Milepost 42 ignition when it knew or should have known that reenergizing a compromised transmission line that already started one fire would lead to further ignitions.

48.     The Milepost 42 ignition was the foreseeable result of BPA's decision to (1) not to remove a weakened tree in close proximity to the Cougar-Holden transmission line, and (2) intentionally leave the Cougar-Holden transmission line energized up until the first ignition during an extreme weather event.

49.     The Milepost 47 ignition was the foreseeable result of BPA's decision to reenergize a portion of the Cougar-Holden transmission line after BPA detected a fault in the circuit and BPA knew or should have known that reenergization would result in more ignitions.

50.     It was reasonably foreseeable that ignitions in the dense forests of the McKenzie River Valley would create an uncontrolled fire that would produce smoke capable of damaging Lane County Winemakers' businesses, interests, Vineyards, and property.

51.     BPA's actions or inactions constituted negligence or a higher degree of fault and caused or contributed to the Milepost 42 ignition, the Milepost 47 ignition, and the

SOKOL ⧖ LARKIN

4380 S Macadam Ave., Suite 530
Portland, OR  97239
(503) 221-0699
FAX (503) 223-5706

subsequent Holiday Farm Fire.

52.     BPA's negligence has caused damage to Lane County Winemakers including without limitation costs to replace damaged grapes, costs to remediate smoke taint, costs to replace wines, and damage to their reputations.  Lane County Winemakers are thus entitled to damages that are at least equal to the economic and property damages to Lane County Winemakers that are the result of BPA's negligence or higher degree of fault with respect to the Milepost 42 ignition, the Milepost 47 ignition, and the subsequent Holiday Farm Fire.

53.     BPA's conduct demonstrated a willful, wanton, and reckless disregard for the rights of others, namely Lane County Winemakers.  Given the gross negligence of BPA, Lane County Winemakers are also entitled to twice the amount of their property and economic losses under ORS 477.089(2).

54.     As a direct and proximate result of BPA's negligence, recklessness and/or gross negligence, Lane County Winemakers have suffered damages in an amount to be proven at trial but are at least $11,421,081.95, plus pre- and post-judgment interest at the highest statutory rate under 28 U.S.C. § 1961.

## SECOND CLAIM FOR RELIEF

### (Trespass – Against BPA)

55.     Lane County Winemakers re-allege and incorporate by this reference, the allegations set forth in paragraphs 1 through 54, as if fully restated herein.

56.     On September 7, 2020, Lane County Winemakers were the lawful owners of real property—the Vineyards—located in the District of Oregon.  Lane County Winemakers' possessory interests in their respective real properties were absolute and

COMPLAINT - 16

exclusive.

57.     BPA negligently, recklessly, and/or intentionally allowed the ignition of the Milepost 42 ignition and the Milepost 47 ignition, which resulted in the uncontrollable spread of the Holiday Farm Fire, damaging Lane County Winemakers' Vineyards and business interests.  Smoke, embers, ash, odors, gases and airborne particulates attributable to the Holiday Farm Fire passed through, entered onto, had contact with, or otherwise settled upon Lane County Winemakers' real properties.  These exposures of transitory and permanent deposits of the Holiday Farm Fire's toxic and destructive byproducts damaged, destroyed, and trespassed upon Lane County Winemakers' real and personal property, including Lane County Winemakers' grapes.

58.     BPA knew that a trespass would result from its actions and failures to act. BPA's actions and inactions in setting in motion the unauthorized entry and trespass were undertaken knowing that a trespass would result, and a trespass resulted from those actions and inactions.

59.     Lane County Winemakers did not grant permission for any fire, or the byproducts thereof to enter onto, pass through, or settle upon Lane County Winemakers' respective real properties.

60.     These trespasses were a substantial factor in causing Lane County Winemakers to suffer foreseeable harm to Lane County Winemakers' businesses, interests, Vineyards, and property.

61.     BPA's action or inaction constituted negligence or a higher degree of fault and caused or contributed to the Holiday Farm Fire or contributed to the spread of the Holiday Farm Fire.

COMPLAINT - 17

SOKOL ⎇ LARKIN

4380 S Macadam Ave., Suite 530
Portland, OR  97239
(503) 221-0699
FAX (503) 223-5706

62.     Lane County Winemakers are thus entitled to damages that are at least equal to the economic and property damages to Lane County Winemakers that are the result of BPA's trespass with respect to the Milepost 42 ignition, the Milepost 47 ignition, and the subsequent Holiday Farm Fire.  Given the recklessness and/or gross negligence of BPA, Lane County Winemakers are also entitled to twice the amount of their property and economic losses under ORS 477.089(2).

63.     Lane County Winemakers' damages from BPA's trespass will be proved at trial but are at least $11,421,081.95, plus pre- and post-judgment interest at the highest statutory rate under 28 U.S.C. § 1961.

## THIRD CLAIM FOR RELIEF

### (Private Nuisance – Against BPA)

64.     Lane County Winemakers re-allege and incorporate by this reference, the allegations set forth in paragraphs 1 through 63, as if fully restated herein.

65.     Lane County Winemakers are the lawful owners of real property—the Vineyards—located in the District of Oregon.  Lane County Winemakers' interests in the Vineyards predated the Holiday Farm Fire and continue to date.

66.     Lane County Winemakers are entitled to exclusive control, quiet use, and enjoyment of the Vineyards, and were entitled to such control, use, and enjoyment before, during, and after the Holiday Farm Fire of 2020.

67.     BPA's failures, actions, and omissions before, during, and throughout the ignition of the Milepost 42 ignition, the Milepost 47 ignition, and the duration of the Holiday Farm Fire resulted in the creation of a nuisance that caused damage to the Lane County Winemakers.  The nuisance created by BPA substantially and unreasonably interfered

COMPLAINT - 18

SOKOL ⟨S⟩ LARKIN

with the Lane County Winemakers' use and enjoyment of the Vineyards.

68.    BPA's conduct was reckless, negligent, and demonstrated a complete disregard of Lane County Winemakers' lawful rights to possess and use the Vineyards free from interference by BPA.  Its conduct was a substantial factor in Lane County Winemakers' damages.

69.    BPA's action or inaction constituted negligence or a higher degree of fault and caused or contributed to the Milepost 42 ignition and the Milepost 47 ignition which were the causes of the Holiday Farm Fire or contributed to the spread of the Holiday Farm Fire.

70.    Lane County Winemakers are thus entitled to damages that are at least equal to the economic and property damages to Lane County Winemakers that are the result of BPA's nuisance with respect to the Milepost 42 ignition, the Milepost 47 ignition, and the subsequent Holiday Farm Fire.  Given the recklessness and/or gross negligence of BPA, Lane County Winemakers are also entitled to twice the amount of their property and economic losses under ORS 477.089(2).

71.    Lane County Winemakers' damages from BPA's private nuisance will be proved at trial but are at least $11,421,081.95, plus pre- and post-judgment interest at the highest statutory rate under 28 U.S.C. § 1961.

### <u>FOURTH CLAIM FOR RELIEF</u>

### (Public Nuisance – Against BPA)

72.    Lane County Winemakers re-allege and incorporate by this reference, the allegations set forth in paragraphs 1 through 71, as is fully restated herein.

73.    Lane County Winemakers are the lawful owners of real property—the

COMPLAINT - 19

SOKOL ⧖ LARKIN

4380 S Macadam Ave., Suite 530
Portland, OR  97239
(503) 221-0699
FAX (503) 223-5706

Vineyards—located in the District of Oregon.  Lane County Winemakers' interests in the Vineyards predated the Holiday Farm Fire and continue to date.

74.    Lane County Winemakers are entitled to exclusive control, quiet use, and enjoyment of the Vineyards, and were entitled to such control, use, and enjoyment before, during, and after the Holiday Farm Fire of 2020.

75.    BPA's failures, actions, and omissions before, during, and throughout the ignition of the Milepost 42 ignition, the Milepost 47 ignition, and the duration of the Holiday Farm Fire resulted in the creation of a nuisance that caused damage to the Lane County Winemakers.  The nuisance created by BPA substantially and unreasonably interfered with the Lane County Winemakers' use and enjoyment of the Vineyards.

76.    The Holiday Farm Fire burned uncontrolled and without proper action being taken by BPA to prevent its spread.  Thus, under the substantive tort law of the State of Oregon, specifically ORS 477.064, the Holiday Farm Fire constitutes a public nuisance because of its menace to life, forest resources, and/or property.

77.    BPA's conduct was reckless, negligent, and demonstrated a complete disregard of Lane County Winemakers' lawful rights to possess and use the Vineyards free from interference by BPA.  Its conduct was a substantial factor in Lane County Winemakers' damages.

78.    Lane County Winemakers suffered a special injury distinct from the public as a result of BPA's nuisance, including because of the damages suffered by Lane County Winemakers, and the nuisance interfered with Lane County Winemakers' use and enjoyment of the Vineyards.

79.    BPA's action or inaction constituted negligence or a higher degree of fault

COMPLAINT - 20

SOKOL ⚖ LARKIN

and caused or contributed to the Milepost 42 ignition and Milepost 47 ignition which caused or contributed to the Holiday Farm Fire, or contributed to the spread of the Holiday Farm Fire.

80.    Lane County Winemakers are thus entitled to damages that are at least equal to the economic and property damages to the Vineyards.  Given the recklessness and/or gross negligence of BPA, Lane County Winemakers are also entitled to twice the amount of their property and economic losses under ORS 477.089(2).

81.    The public nuisance created by BPA caused Lane County Winemakers to suffer a special injury distinct from the general public and, as a direct result of BPA's actions and/or inactions, Lane County Winemakers suffered damages in an amount that will be proved at trial, but are at least a substantial portion of the total $11,421,081.95 that Lane County Winemakers suffered as a result of the Holiday Farm Fire, plus post-judgment interest at the highest statutory rate under 18 U.S.C. § 1961.

## FIFTH CLAIM FOR RELIEF

### (Trespass – Against LEC)

82.    Lane County Winemakers re-allege and incorporate by this reference, the allegations set forth in paragraphs 1 through 81, as if fully restated herein.

83.    On September 7, 2020, Lane County Winemakers were the lawful owners of real property—the Vineyards—located in the District of Oregon.  Lane County Winemakers' possessory interests in their respective real properties were absolute and exclusive.

84.    LEC negligently, recklessly, and/or intentionally allowed the Milepost 47 ignition and the Holiday Farm Fire to ignite and spread uncontrollably, damaging Lane

COMPLAINT - 21

County Winemakers' Vineyards and business interests.  Smoke, embers, ash, odors, gases and airborne particulates attributable to the Holiday Farm Fire passed through, entered onto, had contact with, or otherwise settled upon Lane County Winemakers' real properties.  These exposures of transitory and permanent deposits of the Holiday Farm Fire's toxic and destructive byproducts damaged, destroyed, and trespassed upon Lane County Winemakers' real and personal property, including Lane County Winemakers' grapes.

85.     LEC knew that a trespass would result from its actions and failures to act. LEC's actions and inactions in setting in motion the unauthorized entry and trespass were undertaken knowing that a trespass would result, and a trespass resulted from those actions and inactions.

86.     Lane County Winemakers did not grant permission for any fire, or the byproducts thereof to enter onto, pass through, or settle upon Lane County Winemakers respective real properties.

87.     These trespasses were a substantial factor in causing Lane County Winemakers to suffer foreseeable harm to Lane County Winemakers' businesses, interests, Vineyards, and property.

88.     LEC's action or inaction constituted negligence or a higher degree of fault and caused or contributed to the Milepost 47 ignition, caused or contributed to the Holiday Farm Fire, or contributed to the spread of the Holiday Farm Fire.

89.     Lane County Winemakers are thus entitled to damages that are at least equal to the economic and property damages to Lane County Winemakers that are the result of LEC's trespass with respect to the Milepost 47 ignition and the subsequent

SOKOL ☖ LARKIN

4380 S Macadam Ave., Suite 530
Portland, OR  97239
(503) 221-0699
FAX (503) 223-5706

Holiday Farm Fire.  Given the recklessness and/or gross negligence of LEC, Lane County Winemakers are also entitled to twice the amount of their property and economic losses under ORS 477.089(2).

90.    Lane County Winemakers' damages from LEC's trespass will be proved at trial but are at least $11,421,081.95, plus pre- and post-judgment interest at the highest statutory rate under 28 U.S.C. § 1961.

## SIXTH CLAIM FOR RELIEF

### (Private Nuisance – Against LEC)

91.    Lane County Winemakers re-allege and incorporate by this reference, the allegations set forth in paragraphs 1 through 90, as if fully restated herein.

92.    Lane County Winemakers are the lawful owners of real property—the Vineyards—located in the District of Oregon.  Lane County Winemakers' interests in the Vineyards predated the Holiday Farm Fire and continue to date.

93.    Lane County Winemakers are entitled to exclusive control, quiet use, and enjoyment of the Vineyards, and were entitled to such control, use, and enjoyment before, during, and after the Holiday Farm Fire of 2020.

94.    LEC's failures, actions, and omissions before, during, and throughout the ignition of the Milepost 47 ignition and the duration of the Holiday Farm Fire resulted in the creation of a nuisance that caused damage to the Lane County Winemakers.  The nuisance created by LEC substantially and unreasonably interfered with the Lane County Winemakers' use and enjoyment of the Vineyards.

95.    LEC's conduct was reckless, negligent, and demonstrated a complete disregard of Lane County Winemakers' lawful rights to possess and use the Vineyards

COMPLAINT - 23

SOKOL �containers LARKIN

4380 S Macadam Ave., Suite 530
Portland, OR  97239
(503) 221-0699
FAX (503) 223-5706

free from interference by LEC.  Its conduct was a substantial factor in Lane County Winemakers' damages.

96.    LEC's action or inaction constituted negligence or a higher degree of fault and caused or contributed to the Milepost 47 ignition that was a cause of the Holiday Farm Fire or contributed to the spread of the Holiday Farm Fire.

97.    Lane County Winemakers are thus entitled to damages that are at least equal to the economic and property damages to Lane County Winemakers that are the result of LEC's nuisance with respect to the Milepost 47 ignition and the subsequent Holiday Farm Fire.  Given the recklessness and/or gross negligence of LEC, Lane County Winemakers are also entitled to twice the amount of their property and economic losses under ORS 477.089(2).

98.    Lane County Winemakers' damages from LEC's private nuisance will be proved at trial but are at least $11,421,081.95, plus pre- and post-judgment interest at the highest statutory rate under 28 U.S.C. § 1961.

## SEVENTH CLAIM FOR RELIEF

### (Public Nuisance – Against LEC)

99.    Lane County Winemakers re-allege and incorporate by this reference, the allegations set forth in paragraphs 1 through 98, as is fully restated herein.

100.    Lane County Winemakers are the lawful owners of real property—the Vineyards—located in the District of Oregon.  Lane County Winemakers' interests in the Vineyards predated the Holiday Farm Fire and continue to date.

101.    Lane County Winemakers are entitled to exclusive control, quiet use, and enjoyment of the Vineyards, and were entitled to such control, use, and enjoyment before,

COMPLAINT - 24

during, and after the Holiday Farm Fire of 2020.

102.    LEC's failures, actions, and omissions before, during, and throughout the ignition of the Milepost 47 ignition and the duration of the Holiday Farm Fire resulted in the creation of a nuisance that caused damage to the Lane County Winemakers.  The nuisance created by LEC substantially and unreasonably interfered with the Lane County Winemakers' use and enjoyment of the Vineyards.

103.    The Holiday Farm Fire burned uncontrolled and without proper action being taken by LEC to prevent its spread.  Thus, under the substantive tort law of the State of Oregon, specifically ORS 477.064, the Holiday Farm Fire constitutes a public nuisance because of its menace to life, forest resources, and/or property.

104.    LEC's conduct was reckless, negligent, and demonstrated a complete disregard of Lane County Winemakers' lawful rights to possess and use the Vineyards free from interference by LEC.  Its conduct was a substantial factor in Lane County Winemakers' damages.

105.    Lane County Winemakers suffered a special injury distinct from the public as a result of LEC's nuisance, including because of the damages suffered by Lane County Winemakers, and the nuisance interfered with Lane County Winemakers' use and enjoyment of the Vineyards.

106.    LEC's action or inaction constituted negligence or a higher degree of fault and caused or contributed to the Milepost 47 ignition which was a cause of the Holiday Farm Fire or contributed to the spread of the Holiday Farm Fire.

107.    Lane County Winemakers are thus entitled to damages that are at least equal to the economic and property damages to the Vineyards.  Given the recklessness

SOKOL ⌂ LARKIN

4380 S Macadam Ave., Suite 530
Portland, OR  97239
(503) 221-0699
FAX (503) 223-5706

and/or gross negligence of LEC, Lane County Winemakers are also entitled to twice the amount of their property and economic losses under ORS 477.089(2).

108.    The public nuisance created by LEC caused Lane County Winemakers to suffer a special injury distinct from the general public and, as a direct result of LEC's actions and/or inactions, Lane County Winemakers suffered damages in an amount that will be proved at trial, but are at least a substantial portion of the total $11,421,081.95 that Lane County Winemakers suffered as a result of the Holiday Farm Fire, plus post-judgment interest at the highest statutory rate under 18 U.S.C. § 1961.

## DEMAND FOR JURY TRIAL

109.    Lane County Wineries demand a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Chalice Vineyards, L.L.C., dba Iris Vineyards, King Estate Winery Limited Partnership, and Pfeiffer Vineyards, Inc. hereby pray for judgment against Defendants BPA and LEC, as follows:

A.    On Lane County Winemakers' First Claim for Relief, for judgment against BPA in an amount to be proved at trial, plus an award of double damages under ORS 477.089(2) and pre- and post-judgment interest at the highest applicable rate.

B.    On Lane County Winemakers' Second Claim for Relief, for judgment against BPA in an amount to be proved at trial, plus an award of double damages under ORS 477.089(2) and pre- and post-judgment interest at the highest applicable rate.

C.    On Lane County Winemakers' Third Claim for Relief, for judgment against BPA in an amount to be proved at trial, plus an award of double damages under ORS 477.089(2) and pre- and post-judgment interest at the highest applicable rate.

COMPLAINT - 26

D.      On Lane County Winemakers' Fourth Claim for Relief, for judgment against BPA in an amount to be proved at trial, plus an award of double damages under ORS 477.089(2) and pre- and post-judgment interest at the highest applicable rate.

E.      On Lane County Winemakers' Fifth Claim for Relief, for judgment against LEC in an amount to be proved at trial, plus an award of double damages under ORS 477.089(2) and pre- and post-judgment interest at the highest applicable rate.

F.      On Lane County Winemakers' Sixth Claim for Relief, for judgment against LEC in an amount to be proved at trial, plus an award of double damages under ORS 477.089(2) and pre- and post-judgment interest at the highest applicable rate.

G.      On Lane County Winemakers' Seventh Claim for Relief, for judgment against LEC in an amount to be proved at trial, plus an award of double damages under ORS 477.089(2) and pre- and post-judgment interest at the highest applicable rate.

H.      For Lane County Winemakers' reasonable costs and disbursements, including attorney fees as allowed by 28 U.S.C. § 2678; and

I.      For other such relief as the Court deems just and proper.

DATED this 13th day of September, 2024.

SOKOL, LARKIN, WAGNER & STORTI LLC


By: */s/ Thomas A. Larkin*
        Thomas A. Larkin, OSB #923623
        tlarkin@sokol-larkin.com
        Grant N. Margeson, OSB #215754
        gmargeson@sokol-larkin.com
        *Attorneys for Plaintiffs Chalice Vineyards,*
        *L.L.C., dba Iris Vineyards, King Estate*
        *Winery Limited Partnership, and Pfeiffer*
        *Vineyards, Inc.*

COMPLAINT - 27

SOKOL ⚖ LARKIN

4380 S Macadam Ave., Suite 530
Portland, OR  97239
(503) 221-0699
FAX (503) 223-5706