UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| CHALICE VINEYARDS, L.L.C., dba IRIS VINEYARDS, an Oregon domestic limited liability company; KING ESTATE WINERY LIMITED PARTNERSHIP, an Oregon domestic limited partnership; and PFEIFFER VINEYARDS, INC., an Oregon domestic business corporation,<br><br>       Plaintiffs,<br><br>   v.<br><br>UNITED STATES and LANE ELECTRIC COOPERATIVE, INC., an Oregon registered electric utility,<br><br>       Defendants. | Case No. 6:24-cv-01559-MTK<br><br>**OPINION AND ORDER** |

**KASUBHAI,** United States District Judge:

      Plaintiffs Chalice Vineyards, LLC, dba Iris Vineyards, King Estate Winery LP, and Pfeiffer Vineyards, Inc. ("Plaintiffs") filed this lawsuit against Defendants United States Bonneville Power Administration ("BPA") and Lane Electric Cooperative, Inc. ("LEC"). Compl., ECF No. 1. Relevant to this Opinion, Plaintiffs allege tort law claims against Defendant BPA under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* ("FTCA"). Defendant BPA moves to dismiss all claims against it, arguing that Plaintiffs' claims under the FTCA are barred by the statute of limitations and that Plaintiffs fail to allege sufficient facts to

plausibly show that equitable tolling applies. Def.'s Mot., ECF No. 23. The Court denies the Motion because counsel for the United States did not comply with Local Rule ("LR") 7-1(a), which requires the parties to meet and confer in good faith prior to filing a motion.

## FACTUAL BACKGROUND

Plaintiffs' allegations are accepted as true for purposes of resolving Defendant BPA's motion to dismiss.

Plaintiffs own and operate commercial wine vineyards in the Willamette Valley. Compl. ¶¶ 2-3, 6. Defendant BPA is a federal "administration within the Department of Energy of the United States that markets power in the Pacific Northwest." *Id.* ¶ 8. Defendant LEC is a private corporation and Oregon registered electric utility provider that provides electricity throughout the McKenzie River Valley. *Id.* ¶ 9.

Around 8:00 p.m. on September 7, 2020, following numerous warnings from the National Weather Service regarding impending high winds and increased fire risk, then-Governor Kate Brown's chief of staff called electric utilities and advised them to "deenergize their lines to prevent ignition of more wildfires." *Id.* ¶¶ 17-18. At 5:25 p.m. the same day, a tree located near Milepost 42 of Highway 127 fell on the A-phase conductor of an energized transmission line operated and controlled by Defendant BPA, causing a fault in the circuit and igniting a fire. *Id.* ¶ 23. "[T]he tree that fell was part of a multi-stem clump of trees that [Defendant] BPA had previously performed maintenance on." *Id.* ¶ 24. Less than a minute after the Milepost 42 ignition, Defendant BPA reenergized its transmission line, which in turn reenergized Defendant LEC's line. *Id.* ¶ 25. Later, around 8:10 p.m. the same day, another tree fell on the Eugene Water and Electric Board's deenergized line located near Milepost 47 of Highway 126, causing the line to connect with Defendant LEC's recently reenergized line and ignite the fallen tree. *Id.* ¶ 26.

The Milepost 42 and 47 ignition points later merged to become the Holiday Farm Fire, which produced smoke particulates that damaged Plaintiffs' wine grapes. *Id.* ¶¶ 19, 30.

On or about September 16, 2020, The Oregonian newspaper published a story about the Holiday Farm Fire that included a quote from BPA spokesperson Doug Johnson stating, "we don't have any evidence that our equipment was associated with starting any fires." *Id.* ¶ 29.

Plaintiffs first learned of Defendant BPA's potential responsibility for the Milepost 42 ignition on or about January 18, 2024. *Id.* ¶ 28. Plaintiffs allege this information was not publicly available prior to that date, and that the official investigation into the cause of the fire was still ongoing when Plaintiffs filed their Complaint on September 13, 2024. *Id.* ¶¶ 28-29.

After learning of Defendant BPA's potential involvement in causing the fire, Plaintiffs presented the required administrative notice under the FTCA to Defendant BPA, *id.* ¶ 12, and subsequently filed suit against Defendant BPA on September 13, 2024, *see id.* Defendant BPA now moves to dismiss all claims against it for failure to file within the statute of limitations.

## STANDARD

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Los Angeles Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Id.* To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the

plaintiff. *Los Angeles Lakers*, 869 F.3d at 800. The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## DISCUSSION

Defendant BPA moves to dismiss all claims against it, arguing that Plaintiffs' claims under the FTCA are barred by the statute of limitations and that Plaintiffs fail to allege sufficient facts to plausibly show that equitable tolling applies. Plaintiffs' dispute the merits of Defendant BPA's Motion and also argue that the Motion should be dismissed because counsel for the United States, on behalf of Defendant BPA, failed to meet and confer prior to filing. Counsel for the United States replies that it satisfied the conferral requirement when it sought a meet and conferral telephone conference the day before the deadline to file the Motion.

Under LR 7-1(a)(1), "the first paragraph of every motion must certify that . . . the parties made a good faith effort through personal or telephone conferences to resolve the dispute and have been unable to do so; or [that t]he opposing party willfully refused to confer." "When conferring about a dispositive motion, the parties must discuss each claim, defense, or issue that is the subject of the proposed motion." LR 7-1(a)(2). "The Court may deny any motion that fails

to meet this certification requirement." LR 7-1(a)(3); *Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1131 (9th Cir. 2012) ("Denial of a motion as the result of a failure to comply with local rules is well within a district court's discretion."). "Simply sending an email to opposing counsel and not allowing sufficient time for a meaningful conference by telephone or in person is insufficient compliance with the local rules of this district." *Ekeya v. Shriners Hosp. for Child., Portland*, No. 3:17-CV-195-SI, 2017 WL 3707396, at *2 (D. Or. Aug. 28, 2017).

Here, when filing the Motion to Dismiss, counsel for the United States certified that:

> Counsel for the United States made a good-faith effort to resolve this motion. Counsel for the United States attempted to contact Plaintiff's counsel by email and phone, but the parties were unable to arrange a phone call before the filing deadline. The United States anticipates that Plaintiff will oppose this motion.

Def.'s Mot. at 2.

The United States' counsel's characterization of their effort to confer as "good-faith" is undermined by the record before the Court. Plaintiffs filed their Complaint on September 13, 2024. ECF No. 1. The deadline for Defendant BPA to answer the Complaint or to file a responsive pleading was Monday, December 9, 2024. Fed. R. Civ. P. 12(a)(2). Approximately sixty-days after receiving service of the Complaint, on Thursday, December 5, 2024, counsel for the United States emailed Plaintiffs asking if they opposed a thirty-day extension of time to respond to the Complaint. Margeson Decl. Ex. 1 at 4, ECF No. 28-1. The email from counsel for the United States also stated:

> Also, I've been in communication with BPA agency counsel regarding the tort notice that was received by BPA on behalf of Chalice Vineyards. The agency received notice from plaintiff (s) in February of 2024. Do you know if that was the earliest time that notice was submitted to BPA? Thank you for checking.

*Id.*

On Friday, December 6, 2024, Plaintiffs responded to the email and agreed to the requested thirty-day extension. *Id.* Plaintiffs' email response did not address opposing counsel's

question about tort notice to Defendant BPA. There is no evidence that discussions between counsel regarding the tort claim notice continued.

On Monday, December 9, 2024, Defendant BPA filed an unopposed motion for extension of time, seeking to extend the deadline to respond to Plaintiffs' Complaint to January 8, 2025. ECF No. 21. Counsel for the United States stated that "[t]his motion is made in good faith and not for the purposes of delay, but with the intent to carefully and expeditiously resolve the issues raised in the complaint." *Id.* at 2. Absent from the motion was any "[s]howing of effective prior use of time," as required under the local rules. LR 16-3(a)(2). In fact, the United States' counsel's real reason for seeking the extension of time to respond to the Complaint was that "[w]ith this year's late Thanksgiving and the holidays approaching, many in our office and BPA staff will be out of the office in the coming weeks, and we're in the middle of discovery with the earlier consolidated H[oliday Farm Fire] cases." Margeson Decl. Ex. 1 at 4. The Court granted the motion for extension of time but noted that "Defendant United States filed its motion on the deadline to respond." ECF No. 22. The Court reminded the parties that pursuant to its Case Management Order:

> [a]bsent exigent circumstances, the Court directs the parties to file future motions for extension, if any, a minimum of five business days before the deadline they seek to extend. *See* Case Management Order ECF No. 11. Further extensions will not be granted without a showing of good cause. Work-load issues do not constitute good cause.

*Id.* The Court extended the deadline for Defendant BPA to respond to Plaintiff's Complaint by thirty-days, to January 8, 2025. *Id.*

Twenty-nine days later, on January 7, 2025, counsel for the United States left a voicemail with Plaintiffs' counsel and sent an email at 3:39 PM notifying them that they intended on filing a motion to dismiss. Counsel for the United States requested "a couple of minutes for a phone

call either this afternoon or tomorrow morning to discuss" what it characterized as "a pretty straight forward issue regarding notice of the federal claims[.]" Margeson Decl. Ex. 1 at 3.

As reasonably expected, Plaintiffs' counsel was unable to drop everything and respond immediately to opposing counsel's thinly veiled attempt to confer in form but not in substance. Plaintiffs responded by email the next day at 3:14 PM:

> I got your voicemail and have been tied up yesterday and today. We are happy to explain Plaintiffs' position in a conferral but are not available until Friday. Could you please let me know times on Friday that you are available?

*Id.* at 1. The email exchange between the attorneys continued that same day:

> Counsel for the United States at 3:16 PM:
>
> > The deadline for the United States' response is today, and unfortunately, Judge Kasubhai put in his last minute order that no further extensions would be granted.

*Id.* at 2. This response misrepresented the Court's minute order, which was not absolute, and stated that "[f]urther extensions will not be granted *without a showing of good cause*." ECF No. 22. Counsel for the United States could have shown good cause by explaining that a modest extension was necessary to allow for conferral. Indeed, this is precisely what occurred just a few weeks later when they sought an extension to respond to Defendant LEC's crossclaims, described below. Instead, counsel for the United States attempted to circumvent the conferral requirement by hiding behind an exigency of their own making, arguing to Plaintiffs' counsel that they were hamstrung by the Court's prior ruling.

> Plaintiffs replied at 3:45 PM:
>
> > If you had reached out last week, we would have been able to find a time to confer—waiting until 3:39 pm the day before the deadline does not give the parties a good-faith opportunity for a conferral and, as a result, any motion filed by the United States will not comply with the requirements of LR 7-1.

*Id.* at 1.

      Counsel for the United States responded at 4:56 PM:

> LR 7-1 has no requirement to provide week-long notice prior to filing a motion. My substantive email from yesterday afternoon outlined the issue for the timing and notice requirements a party must meet prior to bringing a claim in federal court under the FTCA, outlined that your client did not submit any form of tort notice to any federal agency until February 2024 when the tort notice deadline was September 7, 2022, and I asked that you please call me yesterday or today to discuss. When neither a call nor a reply to our email came over the next 24 hours, I called this afternoon for follow up because a five-or-ten min conversation is not a heavy lift and would be all that's needed to discuss the lack of agency notice.
>
> Our office has met the good faith requirements under LR 7-1. We will state in our motion that the United States attempted to confer, that the parties were unable to confer, and that it is believed Plaintiff opposes this motion.

*Id.* at 1–2.

      The United States' counsel's refusal to move for an extension of time to confer is puzzling. Just two days after this email exchange, on January 10, 2025, Defendant BPA joined Plaintiffs in filing a stipulated motion for extension of time to complete briefing on the Motion to Dismiss, which the Court granted. ECF Nos. 25, 26. Then, on February 7, 2025, counsel for the United States filed another unopposed motion to extend a deadline, this time, to extend the deadline to respond to Defendant LEC's crossclaims to February 18, 2025. ECF No. 29. Counsel for the United States explained to the Court that the parties had "been conferring in an effort to avoid motion practice" and "would benefit from additional time to clarify and narrow the issues." *Id.* The Court granted the motion, despite it being the second time that the United States' counsel had waited to move for an extension on the deadline to file a responsive pleading. To date, Defendant BPA has not responded to Defendant LEC's crossclaims.

      With this backdrop in mind, the Court finds that counsel for the United States not only failed to confer but also failed *to attempt in good faith* to confer, prior to filing the Motion to

Dismiss. "The requirement to confer 'is not a meaningless formality, nor is it optional; instead, the purpose of a meet and confer requirement is for the parties to engage in a meaningful dialogue about their respective positions on disputed issues to see whether they can resolve (or at least refine) the disputes without court intervention, saving time and money for the litigants as well as the court system.'" *Grange v. Collateral Recovery LLC*, No. 3:21-CV-00237-YY, 2021 WL 3141502, at *2 (D. Or. July 26, 2021) (quoting *Dairy v. Harry Shelton Livestock, LLC*, 18-CV-06357-RMI, 2020 WL 6269541, at *1 (N.D. Cal. Oct. 23, 2020)).

Similarly, the certification of conferral under LR 7-1 is not an empty ritual. Waiting until 3:39 PM the day before the deadline, after already receiving a thirty-day extension of time, is not a good faith effort. As we proceed with this litigation, the Court expects all counsel, but especially those representing the United States of America, to uphold their duties to act as officers of the court. That means working professionally with opposing counsel by allowing adequate time to schedule meetings for meaningful conferral. Defendant BPA's Motion to Dismiss is denied for failure to attempt in good faith to confer.

Additionally, the Court has thoroughly reviewed the merits of the Motion to Dismiss and without further discussion in this Opinion, the Court finds that Plaintiffs plausibly allege the extraordinary circumstances prong of the equitable tolling doctrine. "Because the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it 'is not generally amenable to resolution on a Rule 12(b)(6) motion.'" *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995) (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993)); *see Smith v. Davis*, 953 F.3d 582, 600 (9th Cir. 2020) (A plaintiff's allegation that a particular circumstance "was sufficiently egregious so that it could qualify as an 'extraordinary circumstance' that created an impediment to [timely] filing" must be accepted as true at the

motion to dismiss stage.). To the extent that Plaintiffs may need to amend the Complaint to add allegations regarding reasonable diligence, the Court grants leave to do so.

## CONCLUSION

For the reasons above, Defendant BPA's Motion to Dismiss for Failure to Exhaust Administrative Remedies (ECF No. 23) is DENIED.

DATED this 20th day of May 2025.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States District Judge
